# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONNIE KIRKPATRICK, et al., )
)
Plaintiffs, )
) 2:17-cv-00236
v. )
)
GEICO CASUALTY COMPANY, )
)
Defendant. )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Pending before the Court is the Defendant GEICO Casualty Company's ("Geico") Amended Motion for Relief from a Judgment or, Alternatively, for a New Trial. (Am. Mot., ECF No. 99.)[1] Geico asserts a number of bases for relief from judgment pursuant to Federal Rules of Civil Procedure 50, 59, and 60(b)(3). For the reasons that follow, the Amended Motion is denied.

## I. Background

This case arises out of a dispute between married Plaintiffs Ronnie Kirkpatrick and Michelle Vensel (collectively, "Plaintiffs") and Plaintiffs' automobile insurer, Geico. In their Complaint, Plaintiffs alleged that Mr. Kirkpatrick suffered permanent injuries in an automobile accident caused by a negligent driver. (Compl., ECF No. 1 ¶ 5–9.) Plaintiffs alleged that Geico failed to make proper payment of claims under the underinsured motorist benefit of their policy with Geico. (*Id.* at ¶¶ 16, 21.) The case proceeded to trial, where the jury was eventually charged

---

[1] Geico filed an earlier motion seeking the same relief on June 12, 2018. (ECF No. 93.) Therefore, the Court will treat that initial motion as moot in light of the filing of the pending Amended Motion.

with resolving whether Mr. Kirkpatrick and/or Ms. Vensel[2] sustained damages as a result of the automobile accident, and if so, the amount of money necessary to compensate either or both of them for such damages. (Final Jury Instr., Tr. of Proceedings on May 11, 2018, ECF No. 105, 173:24–174:4.)

During the trial, the jury heard testimony from Mr. Kirkpatrick about his car restoration businesses. Mr. Kirkpatrick admitted that he had not finished or sold any cars by the time of the automobile accident, and he had reported only losses to the IRS in the years leading up the accident. (ECF No. 104, 11:16–12:2.) Mr. Kirkpatrick testified about the injuries that he sustained as a result of the automobile accident and the impact that those injuries had on his ability to perform the manual labor necessary to finish the car restorations and sell the cars. (Tr. of Proceedings of May 9, 2018, ECF No. 103, at 160:2–190:22.) Geico retained an expert in the field of orthopedic surgery to perform an independent medical examination of Mr. Kirkpatrick. (Dr. Werries Dep., ECF No. 90, at 10:12–23.) As part of that examination, the expert took a social history and noted that Mr. Kirkpatrick reported that he smokes "about a pack a week." (*Id.* at 23:14–17.) Plaintiffs' motion to strike evidence of such was sustained, and the jury never heard any evidence that Mr. Kirkpatrick smoked.[3]

The jury heard Ms. Vensel's extensive testimony of her education and career in business and finance. (ECF No. 104, at 40:7–49:25.) Ms. Vensel testified that she manages the finances for the car restoration businesses. (*Id.* at 50:1–55:6.) Ms. Vensel testified about the companies'

---

[2] Ms. Vensel alleged a claim for loss of consortium. (Final Jury Instr., Tr. of Proceedings on May 11, 2018, ECF No. 105, 182:7–9.)

[3] The Court's ruling excluding this evidence of Mr. Kirkpatrick's smoking habit is not distinctly in the record, but all parties agree that such ruling was made, and the ruling was repeated by the Court on the record. (*See* Def.'s Br., ECF No. 108, at 5 n.1; Pls.' Br. in Opp'n, ECF No. 110, at 5; Tr. of Proceedings on May 9, 2018, ECF No. 103, at 14:7–13.)

business models, including her own financial projections, and she testified as to how she believed those projections were impacted by Mr. Kirkpatrick's injuries stemming from the automobile accident. (*Id.* at 50:1–79:19.) She reiterated that, at the time of the accident, the car restoration business had not sold a single restored car, but several cars were in the process of being restored by Mr. Kirkpatrick, a process that Ms. Vensel testified could take two to ten years. (ECF No. 104, 60:20–61:11.) Ms. Vensel testified that but for the automobile accident, the businesses' projected cash earnings from 2012 and 2016 would have been over $6 million, but because Mr. Kirkpatrick's injuries delayed the completion of various restorations and slowed down his ability to restore more cars, Ms. Vensel estimated that the businesses suffered a net loss of $2.1 million, which she attributed to the lost time value of money. (*Id.* at 62:6–63:16.)[4]

At the conclusion of Plaintiffs' case in chief, Geico moved for a directed verdict on Plaintiffs' claims for past and future loss of earning capacity, and the Court denied the motion, ruling:

```
Based on the evidence that I have seen and that the jury
has seen, if the jury credits Mr. Kirkpatrick, they will
believe that he is not going to be able to earn as much
money going forward and from the date of the accident to
today wasn't able to earn as much money as he could have
if he had never had the accident. Now, whether they
believe that or not, based on what I have seen so far,
that's going to be their call.
```

(Tr. of Proceedings on May 10, 2018, at 108:19–109:1.)

Geico then put on its expert witness, a certified public accountant (who is also a certified fraud examiner), who testified that, based on his professional opinion, "there is not *reasonable certainty* that any monies were lost as a result of [the automobile] accident." (Tr. of Proceedings

---

[4] Ms. Vensel was not designated as a financial expert, and Geico did not object to any of her testimony on the basis that it offered an expert or other opinion.

3

of May 11, 2018, ECF No. 105, at 84:18–20 (emphasis added).) Plaintiffs did not have any expert economic witness testify at trial.

On the third day of trial, and outside the presence of the jury, the Court placed the following on the record:

> Now, Mr. Geist, I will address this to you. It has been reliably reported to me by very bright members of the Court's staff that during the testimony of some of the witnesses yesterday and during the Courts colloquy with [expert economic witness] Mr. Fellin outside of the presence of the jury Ms. Vensel was demonstrative in her deportment. I am not saying that critically. But finger wagging, head nodding, big smiles, head shaking left to right, up to down is a no-no. So I will let you talk to your client about that. I don't like to deal with those things in the presence of the jury for obvious reasons, and they can be dealt with just as easily in this setting, so you may want to be attentive to that as that unfolds.

(Tr. of Proceedings on May 11, 2018, ECF No. 105, 20:18–21:5.) Nothing more was said at the trial (by anyone) related to Ms. Vensel's behavior or that occasion nor did anyone indicate that such behavior by Ms. Vensel was repeated.

The jury returned a verdict in favor of Plaintiffs. The jury awarded Mr. Kirkpatrick $650,000 for past lost earning capacity, $1,820,000 for future lost earning capacity, and $500,000 for past, present, and future pain and suffering, embarrassment and humiliation, and loss of enjoyment of life. The jury awarded Ms. Vensel $250,000 for loss of consortium. (Jury Verdict, ECF No. 78.) The total damages awarded were $3,220,000, but the verdict was molded to reflect Geico's underinsured motorist policy limit of $900,000. (Judgment, ECF No. 89.)

## II. Legal Standard

### A. Fed. R. Civ. P. 50(b)

Under Federal Rule of Evidence 50, a party may move "for judgment as a matter of law ... at any time before the case is submitted to the jury," which the court may grant if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue...." Fed. R. Civ. P. 50(a). "[A] directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)). If the motion is denied, the losing party may renew its motion within 10 days of the entry of judgment "and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "The court may, on consideration of the renewed motion, enter judgment as a matter of law for the moving party, leave the jury's original verdict undisturbed, or order a new trial." *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 545–46 (3d Cir. 2010).

The court will grant a Rule 50 motion "'only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference,' a verdict in favor of the nonmovant cannot be supported by legally sufficient evidence." *Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*, 530 F.3d 204, 209 (3d Cir. 2008) (quoting *Fair Hous. Council v. Main Line Times*, 141 F.3d 439, 442 (3d Cir. 1998)).

### B. Fed. R. Civ. P. 59

Federal Rule of Civil Procedure 59 enables a losing party to move for a new trial or to alter or amend a judgment. Fed. R. Civ. P. 59. Under Rule 59(a)(1)(A), the court may grant a new trial "for any reason" including purely questions of law and to correct previous rulings such as evidentiary rulings. *Klein v. Hollings*, 992 F.2d 1285, 1289–1290 (3d Cir. 1993). However, the

court should only grant a motion for a new trial when "the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand." *Solomon v. Sch. Dist. of Phila.*, 532 F. App'x 154, 157 (3d Cir. 2013) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)).

Rule 59(e) is typically utilized to relitigate an issue originally decided by the district court and to allege legal error. *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). In order to alter a judgment, the party seeking reconsideration must show at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017).

Denials of motions for new trial and to amend a judgment are reviewed for abuse of discretion, but questions of law are reviewed de novo. *Solomon*, 532 F. App'x at 157.

### C. Fed. R. Civ. P. 60(b)(3)

"Federal Rule of Civil Procedure 60(b) authorizes relief from a final judgment on six separate grounds. Rule 60(b)(3) specifically permits a court to relieve a party from a final judgment for 'fraud[,] . . . misrepresentation, or misconduct[,] . . . .'" *Baxter v. Bressman*, 874 F.3d 142, 148 (3d Cir. 2017) (citing Fed. R. Civ. P. 60(b)(3)). In order to prevail on a Rule 60(b)(3) motion, the moving party must show by clear and convincing evidence "that the adverse party engaged in fraud or other misconduct, and that this misconduct prevented the moving party from fully and fairly presenting her case . . . ." *Gochin v. Thomas Jefferson Univ.*, 667 F. App'x 365, 367 (3d Cir. 2016) (citing *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960), and *Stridiron v. Stridiron*, 698 F.2d 204, 206–07 (3d Cir. 1983)). This is no easy task, "as Rule 60(b) motions are viewed as

6

'extraordinary relief which should be granted only where extraordinary justifying circumstances are present.'" *Id.* (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991)).

## III. <u>Discussion</u>

Geico seeks relief in the form of an altered judgment or a new trial on three bases. First, Geico argues that the jury's award for past and future loss of earning capacity should be vacated because it was against the weight of the evidence. Second, Geico asserts that the Court erred when it suppressed evidence of Mr. Kirkpatrick's smoking habit. Third, Geico points to Ms. Vensel's behaviors during the trial as admonished by the Court as sufficient misconduct to warrant a new trial.

### A. Rule 50(b): Jury Award for Past and Future Loss of Earning Capacity

Geico argues that the jury's award for past and future loss of earning capacity was against the weight of the evidence because there was no evidence that Plaintiffs' car restoration businesses lost profits. Geico argues that the jury had no evidence from which is could base any calculation of lost earning capacity because Plaintiffs' businesses had yet to sell any cars; therefore, there was an insufficient evidentiary foundation upon which the jury could base its award.

"Damages for loss of earning capacity arise out of an impairment of that capacity, and not out of loss of earnings." *Saganowich v. Hachikian*, 35 A.2d 343, 345 (Pa. 1944). Determining whether there was a loss of earning capacity requires the factfinder to ask whether there was "a loss of earning power, and of ability to earn money." *Mazi v. McAnlis*, 74 A.2d 108, 112 (Pa. 1950). As one Pennsylvania Superior Court panel stated, the question is "whether the economic

horizon of the disabled person has been shortened because of the injuries sustained as a result of the tortfeasor's negligence." *Lewis v. Pruitt*, 487 A.2d 16, 21 (Pa. Super. Ct. 1985).[5]

The jury heard evidence from Geico that Plaintiffs' businesses had not yet sold a finished car. They heard testimony from Geico's expert accountant, who testified that there was no reasonable basis to conclude that Plaintiffs lost any money as a result of the automobile accident. Geico argues here what it argued at trial—that the lack of any profit prior to the accident forecloses any finding that the accident diminished Plaintiffs' future earning capacity. However, "[t]he earnings of the plaintiff[s] subsequent to the injury, as compared with [their] earnings at the time of the injury, are merely evidence, but not conclusive evidence, as to whether his earning power has been diminished by the accident." *Saganowich*, 35 A.2d at 345.

The jury also heard evidence that the cars currently in production had substantial estimated appraisal value upon completion and the delays in their completion resulted in later-than-anticipated dates of sale. Specifically, both Plaintiffs testified that the accident had impacted Mr. Kirkpatrick's ability to perform his work at the same pace had he performed it prior to the accident, reducing his ability to work by about one-half.[6] Plaintiffs also testified about how these delays in

---

[5] The Court's final jury instructions described lost past and future earnings capacity, and Geico did not object to the description of such damages in the jury charge. Geico did object, through his motion for a directed verdict on the claims for past and future loss of earning capacity, to giving any instruction at all as to such damages on the basis that the evidence failed to demonstrate any profit from which the jury could reasonable conclude there was a diminished earning capacity claim. (*See* Tr. of Proceedings of May 10, 2018, ECF No. 104, at 106:11–17.) The Court denied that motion without prejudice to its reassertion at any other appropriate time. (*Id.* at 108:4–6.) When the Court reviewed the proposed verdict form, Geico objected to it containing a line for past lost earning capacity or future lost earning capacity based on its position that the jury should simply not be charged on that type of damage. (Tr. of Proceedings of May 11, 2018, ECF No. 105, at 2:23–25.)

[6] (Tr. of Proceedings of May 9, 2018, ECF No. 103, at 165:15–166:10, 170:16–171:10, 176:12–177:2; Tr. of Proceedings of May 10, 2018, ECF No. 104, at 74:17–6).

8

timelines and slower pace affected and continues to affect their business. Mr. Kirkpatrick testified that he was unable to purchase a car that was in his business plan because he did not have the money to buy it. (ECF No. 103, at 191:4–11.) The jury had sufficient evidence from which to conclude that the injuries sustained from the accident would lead to a "shorter economic horizon" for Plaintiffs' business in the form of less cars being restored due to more time being sunk into each restoration, and later sale dates for sales ultimately made. *Lewis*, 487 A.2d at 21.

As to the amount of the award, Geico's argument that there was insufficient evidence from which the jury could use as a "yardstick" for calculating lost earning capacity also fails, as the damages presented to jury on lost earning capacity were not impermissibly speculative. As the Pennsylvania Supreme Court explained in *Kaczkowski v. Bolubasz*:

> [P]redicting lost future earnings entails some degree of speculation. However, that alone does not justify excluding reliable economic evidence since imprecision is inherent in any computation of lost future benefits. In view of our acceptance of the reliability of the science of economics, the victim's lost future earning capacity should be treated like any other question of fact and should be submitted to the trier of fact after a proper foundation and expert testimony.

421 A.2d 1027, 1034 (1980). Furthermore, inflation and productivity can be included in the computation of lost future earnings. *Id.* Again, the jury heard extensive testimony from both Plaintiffs, who testified as to how Mr. Kirkpatrick's injuries from the accident slowed down production and impacted timelines for sales, which would in turn impact the volume and timing of future production. Plaintiffs' car restoration expert provided dollar-figure appraisals for the types of cars that Plaintiffs were in the process of restoring and expected to sell.[7] (Tr. of Proceedings of May 10, 2018, ECF No. 104, at 26:5–20; DeCesaris Dep., ECF No. 82.) The

---

[7] These appraisals ranged from $325,00 (1966 Plymouth Satellite) to up to $ 2.2 million (1972 Plymouth Duster Roy Hill). (DeCesaris Dep., ECF No. 82, at 23:15–26:21, 29:7–30:20.)

damages claims for lost earning capacity presented to the jury had sufficient evidentiary foundation and were not unduly speculative so as to warrant vacating the award.

### B. Fed. R. Civ. P. 59: Mr. Kirkpatrick's History of Smoking

The medical examination of Mr. Kirkpatrick that was conducted at Geico's request during the course of this litigation reported that Mr. Kirkpatrick was a smoker who smoked approximately one pack of cigarettes a week. On Plaintiffs' motion, the Court struck any reference of Mr. Kirkpatrick's smoking habit on the grounds that it was unfairly prejudicial. (Tr. of Proceedings on May 9, 2018, ECF No. 103, 14:7–13.) Geico asserts that this ruling was in error because the jury should have been able to consider Mr. Kirkpatrick's smoking habits when they contemplated Mr. Kirkpatrick's "personal habits and other factors" in order to determine his life expectancy. Geico argues that it is common knowledge that there is no safe level of smoking, so the jury did not need any medical testimony to properly incorporate that evidence into its deliberations.

This Court's ruling is consistent with other district court rulings that a smoking habit unaccompanied by any competent medical evidence that such habit reduces a particular individual's life expectancy has little probative value. *See, e.g., First Am. Bank v. W. DuPage Landscaping, Inc.*, No. 00-cv-4026, 2005 U.S. Dist. LEXIS 20729, at *6–7 (N.D. Ill. Sep. 19, 2005) ("In the absence of [medical or epidemiological] evidence, the fact that Montero smoked is *not* probative of his life expectancy." (emphasis added)). Although it is common knowledge that tobacco has adverse health consequences, it is far from common knowledge what impact smoking a pack of cigarettes a week for an unknown period of time would have on *Mr. Kirkpatrick's* life expectancy. Geico proffered no expert testimony on that point, and it has conceded that it had none. Without more, the risk of both prejudice and confusion from such testimony substantially outweighs any probative value of that social history comment to the examining doctor. Fed. R.

Evid. 403. The Court did not err in excluding the reference to Mr. Kirkpatrick's smoking habit from the evidence submitted to the jury.

### C. Fed. R. Civ. P. 60(b)(3): Ms. Vensel's Deportment During Trial

Finally, Geico argues for relief under Rule 60(b)(3) on the basis that Ms. Vensel's conduct in the courtroom substantially prejudiced Geico's ability to have a fair trial. However, the only evidence of any conduct is the brief statement made by the Court, which was based not on the Court's own observations but those relayed to it by courtroom staff. Neither attorney nor party placed any additional evidence on the record, nor did any attorney or party seek further clarification of the Court's statement. Neither party requested to poll the jury on whether they noticed the conduct to which the Court referenced and what, if any, impact that might have had. Neither party sought a special jury instruction. Geico's counsel admits in its brief in support of the Amended Motion that he did not witness any of the conduct cited by the Court. (ECF No. 108, at 2.)[8] Geico's decision to not further investigate the matter in conjunction with the reality that the only evidence on the record is the brief statement made by the Court outside the presence of the jury leaves the Court to conclude that there is not clear and convincing evidence of an adverse party's engagement of misconduct to warrant such extraordinary relief. *Cf. Bethel v. McAllister Bros.*, 81 F.3d 376, 384 (3d Cir. 1996) (affirming district court's grant of a Rule 60(b)(3) motion where inconsistencies in a party's testimony evidenced crucial misrepresentations that infected the jury award); *Stridiron*, 698 F.2d at 207 (remanding to district court for a Rule 60(b)(3) hearing where the record showed that plaintiff "made a serious misrepresentation of a material matter during discovery" amounting

---

[8] Geico's brief in support of the Amended Motion characterizes Ms. Vensel's behavior as "telegraphing answers" to Mr. Kirkpatrick during his cross-examination in order to "signal[] to her husband what his answers should be," but this characterization goes beyond what was placed on the record by the Court, which is the only evidence in the record related to this event. (ECF No. 108, at 2–3.)

11

to possible fraud). Geico made no contemporaneous request for the Court to do anything beyond issuing the admonition that it did make (which appeared to work), and it has advanced no basis to conclude that its objection now should lead to any relief, let alone a new trial.

## IV. Conclusion

For the foregoing reasons, the Amended Motion (ECF No. 99) is denied. An appropriate Order will issue.

*[Signature]*

Mark R. Hornak
Chief United States District Judge

Dated: January 8, 2019.

cc: All counsel of record